Let me just have this. May it please the Court, I'm Doug Olson, I represent Appellant Dana Cobenais in this appeal. I was also trial counsel in this case as well. The issue I want to focus in on this morning is the issue related to the Court's consent as I have phrased it, it's no consent instruction, which we maintain was erroneous, inconsistent with the law, undermined the elements of the offense as contrary to the statute. In terms of some brief background here, I think you have to start looking at the egregiousness of the error of giving that instruction by a couple of things. There was two divergent factual patterns here, but what Mr. Cobenais testified to is that the sex here was initiated voluntarily and that he had injured Jane Doe during the court . . . Saying that it was entered voluntarily, essentially the same as saying it was consensual? You could use that term, but what's important here is that the statute doesn't use the term, it doesn't use the word voluntarily, it doesn't use the word consensual. It uses the words causing Jane Doe to engage in a sex act by use of force. The question is the question of causation. It was very important for me in terms of getting jury instructions, and the court did tailor its element instructions the way I asked for to avoid this whole issue of getting into consent, because of the issue that she, in fact, got injured here. There wasn't any issue about that, and in fact, both parties agreed that at the point of bleeding and injury, Mr. Cobenais stopped the contact. So it was very critical here that we illuminate the instructions towards the question of causing to engage in a sexual act, and that was my entire argument and that was my entire defense is that this started out as mutual behavior. At the point of injury, he stopped. What happened here is that during the course of the jury instructions, Judge Kyle on his own interjected this issue of consent into the instructions. What does it matter about his stopping? What's that? I said, what does it matter about the point at which he ceased the conduct? Well, it's critical because he engaged in the conduct. He did not use force to engage in the conduct, and so the question has to do, you have to have engagement and you have to have causation, so you have to cause to engage . . . I thought the very nature of the conduct was physical and essentially, in some respects, violent, but . . . Exactly. . . . . but your perception of the case is that it didn't begin because of violence. Is that basically the defense you had, is that violence wasn't what started the conduct? Right. There wasn't any violence to start the conduct, and the issue when we get into the specifics of the instruction is that . . . So, why wouldn't it be relevant and meaningful for the jury to understand the nature of whether the conduct began with violence and was . . . That was my entire argument, and that was my entire argument in the case is that there he didn't cause her to engage in the conduct by the use of force. This is a critical issue in terms of the federal law here because the federal law does not use the word consent, and actually, I think years ago when they drafted the statute, they kept the word consent out of the statute and they focused on the elements, none of which use the word consent. It's cause to engage by the use of force. Now, what the court did was that . . . That was to help the victim though, not to help the defendant. I mean, as I understood the history, they didn't want to use the word consent because it might make it harder for a victim to . . . Right. . . . prevail. They didn't use it in the statute. So . . . Well, I thought you said the first sentence of this instruction was correct. I thought you told Judge Keil that your defense was that Kobanese had consensual relations with the alleged victim. Well, I'll address that specifically. The context of that one statement that I stated to the judge was that all of a sudden this instruction came up during the course of the initial jury instruction conference. And I said, I don't know where this came from. The government didn't ask for it, I didn't ask for it. And I probably inappropriately said the first sentence is okay. And then we got into an elaborate discussion about the rest of the next sentence, which is probably the greater offending of the two sentences. But . . . I understand now that in retrospect, that may be your view. But if we're going to evaluate the district judge's use of discretion, once he is told that he's correct to say that the defense is consensual sexual relations, then another sentence that speaks to the term consent seems less objectionable. Well, there's a whole page of me objecting to the entirety of the instruction. And then we got to the end of the case, and my objections are on page 147 and 267, I objected to the entire thing. So I think that I did say that. It's in the record. But I do want to point out that the first sentence is also . . . it's clearly erroneous statement of the law, because it doesn't use the word cause. It should have said they did not use force against her to cause her to engage in sexual intercourse. And this is what this consent instruction lacks. It lacks the issue of causation, and it interjects the absolutely inappropriate element and notion of accomplishment. And it equates accomplishment with injury and force. That second sentence, this is simply an erroneous statement of the law. It's not the law, and there's no authority for it. There's no consent that the sexual act was accomplished against the will of Jane Doe by the use of force, coercion, or threats. Accomplishments gets to the end result. Why is that so off the wall from how people would understand human behavior? Well, it's not a question of understanding human behavior, it's whether this lines up with the elements of the sexual assault statute, and it doesn't. Because the accomplishment here, that gets you to the end result. That takes me out of my defense, where I argue that this was all initiated between the two people, and that the end result, the accomplishment, that's what we didn't want to get into, and cause. So he says because it was accomplished, the end result was an injury, and he equated- Hold on a second. Hold on a second. Wasn't the term sexual act defined elsewhere in the instructions? Yeah. And wasn't it defined just to be any penetration? Yes, it was appropriately- Okay, so that's the act that's accomplished, not the, what you're calling the end result of this act as it was carried out. The sexual act is a term that's legally defined, so it's accomplished once that definition is satisfied, isn't it? Well, I don't think it's that clear, because it doesn't say a limitation on the sexual act. I think it's very easy to look at the word accomplishment with the sexual act, and then when you equate that by the end of the clause, if you accomplish the sexual act by the use of force, force is defined by injury. Since there was injury here, therefore there's force and it was accomplished. It's virtually directing the verdict here by the use of using the word accomplishment and equating that with force. Since there was an injury here, there wasn't any question of an injury here, and that's at the moment that my client stopped the behavior. So it was very important that the legal elements in this case be carefully provided to the jury. Did you offer . . . I know you didn't want this instruction. Did you offer another theory of the defense instruction? No, I actually . . . No, I didn't. I didn't, and I didn't want to, because I wanted to carefully argue the elements of the statute. I understand that . . . I mean, this is an unusual case, to say the least, all the way around, you know, a difficult defense case, but I wanted to keep it within the narrow confines of the accuracy of the statute as drafted, and unfortunately, the judge interjected this concept of consent and did it contrary to the way that the statute is drawn up. It was misleading and an inaccurate statement of the law, because if you look at the consent instruction, there's two things. There's no causation tied in here, and it's also got this idea of accomplishment, the end result, using force.  So, in your view, the way the jury . . . you think the jury could have read this instruction, where . . . if you're the jury member, what went wrong here? What led them astray? What was the result that they came to that was improper? They saw that there was an injury. She did not . . . and they used . . . you put that clause in there against the will. Well, no one's going to agree to be injured. I mean, so no one . . . I wasn't going to argue that, and I didn't want to get into the idea of the consent to be injured. So we got the problem here is that you've got the accomplishment, it was accomplished, the injury was accomplished by the use of force, which in the use of force is defined as injury. So you take the injury, the accomplishment, and then that phrase against the will just means that she didn't agree with it, and I wasn't ever going to agree, and that's just preposterous. That the injury was just a result of a sexual act that they, too, engaged in voluntarily. Right. And unfortunately, it resulted in injury. Now, that was my entire defense, and this gutted the entire defense, and I'd like to add . . . Well, it doesn't . . . I'm still struggling with the fact that it doesn't say the injury was accomplished against her will. It says the sexual act was accomplished against her will, and I thought you just said sexual act was defined elsewhere as in a more limited way. So if you have any more to say on that, it might be helpful. Well, I think that . . . I mean, the sexual act, it doesn't limit that the sexual act is just the initial sexual act. It says the . . . So I don't think that there's some limitation on the sexual act was accomplished, so it would include the fact, the end result of the sexual act, including the injury. So I think that that's taking a narrow view of the sexual act, because the sexual act is a continuous sexual act. You're concerned that this instruction would lead the jury to think there was no consent. Is that right? Is that . . . when you say it would direct a . . . I mean, there were still the other instructions about the elements. That is true, but my greater view is that there should have been no instruction on this issue of consent at all, because it doesn't exist in the statute, and it's confusing and it's contrary to the elements as we had properly defined, which is causing to engage in a sex act by the use of force. And I'll simply add is that this got . . . and the prejudicial nature of this instruction is so amplified here, because the judge said that this is my position, it wasn't my position, and I had this jury instruction here, which is basically offered as my theory of defense. I never argued it, never referenced it once in my closing argument, and I was stuck with this, which amplifies that somehow I'm agreeing that this is my defense position, which it wasn't. I didn't say that this whole consent and this idea of accomplishment, the end result by use of force, it was actually completely contrary to my entire closing argument, never referenced, and I'm just kind of stuck with it. So it was very prejudicial. I am running out of time, so I'm going to reserve about a minute and a half. Thank you. All right. Thank you, Mr. Olson. Mr. Lackner? Thank you. Thank you, Your Honor. James Lackner for the government. I did not try the case below, but I have reviewed the record extensively, so I am familiar with it. I guess I would start out by saying that the statement that Mr. Olson said that it was well established in the record that the defendant stopped as soon as he saw blood was only established by his own testimony, not established by the testimony of the victim, who essentially testified that she blacked out when things were going on, that she couldn't remember once they got into a fight where he was slapping her and hitting her and getting her to go into this fisting thing. So to the extent that that's a relevant fact, it's a relevant contested fact, and I just want to make the record clear on that. Is this common for the judge to just present a theory of the defense instruction that's not sought? Your experience? I don't know if it's common or not, but I . . . whether it's common or not, I'm not sure is . . . No. I'm just curious. It seemed unusual to me that the judge would say, here's a theory of the defense instruction that the defense hasn't offered. I think it was a bit of an unusual case, but I think you also have to understand a little bit of the background. One of the flaws that Mr. Olson is arguing with this defense instruction is it defines consent. And I'd like to make two points on that. One, you can hardly blame the judge for doing that when you look at both the opening statement and the closing argument of the defendant. Defense attorney argued at least four times in the opening statement used the words consensual sexual activity, consent. At least once, and I stopped counting because I thought I probably would have made my point on this, so there may be more, but at least once in the closing argument, he uses the term consensual sexual activity. So why is it improper for the court to inform the jury what consent means? And again, whether he requested it or not isn't the measure by which you judge the case. You use your normal standard of reviewing jury instructions. And I guess my main point here is that what you're being asked to do in terms of reviewing this jury instruction is really the exact opposite of what you as a court have said many times before in how you review jury instructions, which is you don't look at a single sentence in isolation. You don't take a single word and stretch it out. You look at what the totality of the jury instructions are to make the determination of whether there's a fair and adequate statement of the law. Would you, consent's not an element of this. No, but I don't. And it's not a defense. It is a defense. I don't know how you separate consent from the issue of whether the defendant forced the victim to engage in the sex act by force. But wasn't that the purpose of taking that out, that non-consensual is not the same as force? You still need the force to, in other words, to prove the case. Going back to the legislative history of the Act, the court, excuse me, Congress was very clear that the reason they took it out was because they were concerned about the doctrine of resistance. Right, regardless of, but it's not part of it. It's not part of the statute. It's not an essential element, but that's not the same as saying it's not a relevant concept. As a prosecutor, I don't ever need to prove consent, because if I have to prove consent, then I have to show that the victim did something to show that she was resisting. And that's dangerous for the victim. And as Congress said, look, there's no other statute where we require this. We're not going to require it here. However, as a defense, it is a defense to be able to point out that the victim willingly went along with this. It's relevant to show, hey, I didn't use force. Correct. And when you're talking about consensual sexual activity, as much as a defense attorney did, I think it's a fair thing for the court to say, okay, this is what consent is. And that's what's happened. And to state here that that is not . . . going to the theory of defense instruction itself, that first sentence is really the only part of that instruction that can be classified as a theory of defense. And it lays it out. And to say that that wasn't the theory of defense is just in error, because if you look at the language of that first sentence, it is almost . . . it's taken from the elements of offense instruction, which . . . the second element of it, which the defense attorney submitted to the court and which the court adopted. And so to say that's not my theory of defense is just simply an error. If you just look at the language itself, the first sentence, the theory of defense that we're talking about here, is it is the defendant's position in this case that on the morning of March 14, he and Jane Doe had consensual sexual relations and he did not use force against her to engage in sexual intercourse. The sexual intercourse part is wrong. I don't think that's material. What's important is that that's what he argued and that is what the element of the offense instruction, second element presented by the defendant, says. And then you get to the part that he disagrees with, that there is no consent of the sexual act was accomplished against the will of Jane Doe by the use of force, coercion, or threats. The standard, again, as I said, and as you've said many, many times, is you don't take these things out of isolation. What the defendant is doing is in effect kind of a game of the six degrees of Kevin Bacon where what you have is we're trying to make weird connections all over the place. It's not realistic. It's not a . . . it's not how you approach jury instructions. And, Judge Colleton, you said it better than I did in the brief, but the point is that when you look at that sentence, it's the sexual act that was accomplished. And the sexual act was accomplished against the will. If the sexual act is accomplished against the will, then you have met the statute. And there's nothing here that distorts the statute. But didn't the government argue in closing that the injury was proof of the force? Yeah. There are a couple of instances of that argument, and I guess I have two points on that. One, just to be clear, looking at page, I believe it's 270 of the transcript, at the very beginning of the closing argument, the AUSA did ask the question, was physical force used to perform the sexual act? Mr. Olson objected, misstatement of law, the court said, I'll give the law when you're done. Then, and this is key, because I think this clarifies everything, the AUSA then said, when the judge instructs you on the law, the law is whether the defendant caused the victim to engage in a sexual act by using force against her. In other words, he read the element of offense instruction that Mr. Olson provided to the court. Now, there are other instances where he does get into the nature of the act. But to get into the physical nature of the act is not improper, because the issue in this case was, did she willingly undertake this act? And one of the key questions that the jury has to do when they're looking, they've got the defendant on one side and the victim on the other. She's saying she did not willingly do this. The defendant used force against her. The defendant is saying she willingly undertook this, and then he testifies that as soon as he saw blood, he took his fist out, but that she wanted him to continue.  And one of the questions that a juror, I would imagine, has to answer is, would you willingly undergo this? And so the question is, of the very nature of the act goes to the issue of whether someone willingly went along with this or resisted. And so that's why the physical nature of this act is not only inherent as an issue, but it's probably paramount, because it goes to the question of intent. Did she, was she willing to do this? And it's a fair question to ask, given the nature of this act, would someone be willing to do this? And so that's why it's relevant. And to just say he described the physical nature of the act is really not to say anything of any significance at all, because we're entitled to do that to get into the mindset of the victim. When the defense is essentially consent, despite what the defendant wants to argue here and when the defense is she willingly undertook this, then it becomes highly relevant as to why would she want to? Why would anyone in their right mind want to? And maybe the defendant can point to statistics in his brief that there's 4 or 7% of the population that might want to, great. But it's still a fair question to ask. And that's why it was not improper to do that. And couple that with the fact that at the very beginning, he does, after the objection, state and read the jury instruction and then tell the jury, this is the question you have to answer. It just, there's, to me it defies imagination that that is somehow an improper argument. I don't know if that's a long-winded answer to your question, but. The other issue is related to this, is not only do you not take things out, isolated sentences, but again, you look at jury instructions as a whole and you have to go back and look at the fact, even if there was merit to what the defendant was arguing about the sentence, which I don't concede at all, but you have two other statements by the court in the element of the offense and the first statement in the theory of defense, which is exactly what the defendant submitted to the court. And so clearly, as a whole, this instruction was proper. And unless the court has any other questions of me, I think I'll rest on my breath. I see none, thank you, Mr. Lager. Mr. Olson, your rebuttal. Mr. Olson. Just a few comments. I think it is improper for a judge to create a defendant's theory of defense instruction and give it and tell the jury that this is the defendant's position over the defendant's case. I mean, you did say it was correct, so that . . . And then, I would note that the government states that the first sentence in the objected to instruction, I did object to the entirety of the instruction, page 267 of the transcript, does not use the word in the required element of causation, so it should have, it's omitting the element of causation, so the first half of the instruction is just error, it's wrong. And it isn't what I requested the court to instruct the jury in the elements. And in this case, the court's instruction interjecting this concept of consent, which doesn't exist in the statute, it's not an affirmative defense, it isn't in there, it shouldn't have been interjected, the court should have tailored its instructions consistent with the law. The law doesn't use the word consent, it doesn't get into the volition of the victim, and we've gotten away from the issue of consent. If the court was going to inject the issue of consent into the case, it should have done it, and it should have done it properly, and I don't know where this came from, because government hasn't cited any case that the second sentence, the consent by accomplishment, is appropriate or consistent with the federal law here. And I believe that it was error, it was egregious error, because it uses the word accomplishment, it doesn't have the, it doesn't use the terminology of causation, the required element of it in the defense, and it equates that accomplishment, in other words, that there was an injury here by use of force, essentially directed a verdict against Mr. Kobanais, and I ask the court to reverse the conviction and order a new trial. Thank you, Mr. Ellison. Court thanks both counsel for your presence and argument this morning. We'll take your case under advisement.